UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-275-ODW-8 |
|---|---|
| Plaintiff, | ORDER SETTING FORTH FACTUAL FINDINGS PURSUANT TO THE CARES ACT |
| v. | |
| TENNY GUON LIM, et al., | |
| MICHAEL ALAN SHEPHERD (#8) | |
| Defendant. | |

The Court, having read and considered the parties' stipulation regarding request for an order setting forth factual findings regarding the necessity of proceeding by video teleconference in this case, hereby issues the following factual findings:

(1) On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 (Coronavirus Disease) pandemic.

(2) The Governor of the State of California declared a Proclamation of a State of Emergency to exist in California on March 4, 2020.  Health Officers from Los Angeles,

|   |   |   |
|---|---|---|
| 1 |   | Riverside, Orange, San Bernardino, Santa Barbara, San Luis |
| 2 |   | Obispo, and Ventura Counties subsequently issued local |
| 3 |   | emergency orders and proclamations related to public |
| 4 |   | gatherings. |
| 5 | (3) | To date, several thousand people within the Central |
| 6 |   | District of California have been confirmed to be infected |
| 7 |   | with COVID-19 and the number of those infected continues to |
| 8 |   | rise, causing an emergency pandemic. |
| 9 | (4) | In their continuing guidance, the Centers for Disease |
| 10 |   | Control and Prevention and other public health authorities |
| 11 |   | have suggested the public avoid social gatherings in groups |
| 12 |   | of more than 10 people and practice physical distancing |
| 13 |   | (within about six feet) between individuals to potentially |
| 14 |   | slow the spread of COVID-19.  The virus is thought to |
| 15 |   | spread mainly from person-to-person contact, and no vaccine |
| 16 |   | currently exists. |
| 17 | (5) | These social distancing guidelines -- which are essential |
| 18 |   | to combatting the virus -- are generally not compatible |
| 19 |   | with holding in-person court hearings. |
| 20 | (6) | On March 27, 2020, Congress passed the Coronavirus Aid, |
| 21 |   | Relief, and Economic Security Act ("CARES Act"), which |
| 22 |   | authorized the Judicial Conference of the United States to |
| 23 |   | provide authority to Chief District Judges to permit |
| 24 |   | certain criminal proceedings to be conducted by video or |
| 25 |   | telephonic conference. |
| 26 | (7) | Under § 15002(b) of the CARES Act, "if the Judicial |
| 27 |   | Conference of the United States finds that emergency |
| 28 |   | conditions due to the national emergency declared by the |

|   |   |   |
|---|---|---|
| 1 |  | President under the National Emergencies Act (50 U.S.C. |
| 2 |  | 1601 et seq.) with respect to the Coronavirus Disease 2019 |
| 3 |  | (COVID-19) will materially affect the functioning of either |
| 4 |  | the Federal courts generally or a particular district court |
| 5 |  | of the United States, the chief judge of a district |
| 6 |  | court . . . specifically finds, upon application of the |
| 7 |  | Attorney General or the designee of the Attorney General, |
| 8 |  | or on motion of the judge or justice, that felony pleas |
| 9 |  | under Rule 11 of the Federal Rules of Criminal Procedure |
| 10 |  | and felony sentencings under Rule 32 of the Federal Rules |
| 11 |  | of Criminal Procedure cannot be conducted in person without |
| 12 |  | seriously jeopardizing public health and safety, and the |
| 13 |  | district judge in a particular case finds for specific |
| 14 |  | reasons that the plea or sentencing in that case cannot be |
| 15 |  | further delayed without serious harm to the interests of |
| 16 |  | justice, the plea or sentencing in that case may be |
| 17 |  | conducted by video teleconference, or by telephone |
| 18 |  | conference if video teleconferencing is not reasonably |
| 19 |  | available." |
| 20 | (8) | On March 29, 2020, the Judicial Conference of the United |
| 21 |  | States made the appropriate findings as required under the |
| 22 |  | CARES Act, finding specifically that "emergency conditions |
| 23 |  | due to the national emergency declared by the President |
| 24 |  | under the National Emergencies Act (50 U.S.C. § 1601, et |
| 25 |  | seq.) with respect to the Coronavirus Disease 2019 (COVID- |
| 26 |  | 19) have materially affected and will materially affect the |
| 27 |  | functioning of the federal courts generally." |
| 28 |  |  |

(9) On March 29, 2020, the Chief Judge of this District also made the appropriate findings as required under the CARES Act, finding "that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety.  As a result, if judges in individual cases find, for specific reasons, that felony pleas or sentencings in those cases cannot be further delayed without serious harm to the interests of justice, judges may, with the consent of the defendant or the juvenile after consultation with counsel, conduct those proceedings by video conference, or by telephonic conference if video conferencing is not reasonably available."

(10) Through this order, I now find that the guilty-plea hearing in this case cannot be further delayed without serious harm to the interests of justice.  My specific reasons are as follows:

(11) On March 23, 2020, the Chief Judge of this District activated The Continuity of Operations ("COOP") Plan for the Central District of California.

(12) Under the COOP Plan, all of the Courthouses of the Central District of California are closed to the public except for hearings on criminal duty matters.  Hearings by video and telephonic conference may be held by individual Judges in certain criminal matters, but Judges have no discretion to hold in-person hearings.

(13) The Court has extended the activation of the COOP Plan through and including June 22, 2020.  C.D. Cal. General Order 20-08, In Re: Coronavirus Public Emergency, Order Concerning Phased Reopening of the Court, at 2 (May 28, 2020).  This extension order also sets forth a plan for reopening, which is to occur in three phases.  Phase 1 is to begin no earlier than June 1 and contemplates the return of certain staff to the courthouses to prepare for limited in-court hearings.  Phase 2 is to begin no earlier than June 22, 2020 and contemplates reopening courthouses for limited in-court hearings.  The last phase (Phase 3) contemplates the resumption of jury trials, but the date of this phase has not been determined.  As a result, no Judge in this District will be able to hold any criminal trials or in-person hearings in criminal or civil cases until June 23, 2020 -- at the earliest, when the Court contemplates implementing Phase 2 of the reopening plan.  Even then, in-person hearings are likely to be limited due to the necessity for social distancing and other safety measures.  Jury trials are unlikely to resume until even later, when the Court implements the third and final reopening phase.

(14) On April 9, 2020, the Judicial Council of the Ninth Circuit declared a judicial emergency in this District pursuant to 18 U.S.C. § 3174(d).  The Judicial Council declared this emergency because, among other reasons, the Central District of California is one of the busiest judicial districts in the country.

(15) As described in the report accompanying the Judicial Council's declaration, this District currently ranks 3rd in the Ninth Circuit and 12th nationally in weighted filings, with 692 weighted filings per judgeship for the 12-month period ending December 31, 2019.  Considering the 10 judicial vacancies, the adjusted weighted filings per judge is 1,076.  Overall, the total civil and criminal filings in the District reached 16,890 in 2019.

(16) Prior to the Judicial Council declaring the judicial emergency, the number of criminal cases filed by the U.S. Attorney's Office had risen substantially over previous totals.  The USAO has represented that the number of AUSAs in the Central District is at an all-time high, and that the USAO will soon have approximately 220 AUSAs to prosecute criminal cases.

(17) This District is authorized 27 permanent judgeships, one temporary judgeship, and has 10 vacancies, the oldest of which has remained unfilled since 2014.  All are categorized as judicial emergencies.  There are eight nominees pending, but due to the COVID-19 pandemic the status of confirmation hearing dates remains uncertain. Seven active district judges are eligible to take senior status or retire immediately.

(18) Since 2011, this District has requested anywhere from 8 to 13 additional judgeships.  The District has not received any additional permanent or temporary judgeships since 1990.

6

(19) As the Judicial Conference concluded, the exceptionally large number of cases pending in this District represents an emergency. A vacancy on a district court is generally considered an "emergency" if the court's "weighted filings" exceed 600 per judgeship. The Central District of California's weighted filings, 692 per judgeship (61 percent above the Conference standard), are high enough for each Judge's caseload to be deemed an emergency.

(20) In normal times, these extreme caseloads can interfere with the prompt resolution of cases and administration of justice in this District. In an October 2019 letter to the White House and Congress, the Chief Judge of this District warned that "[a]s alarming as this is, the situation may well worsen. Many of the active district judges on the Court who are eligible to retire continue to serve, despite the ever growing workload. If all of them chose to retire, only eleven active judges would remain, putting at grave risk our Court's ability to serve the millions of people in the Central District."

(21) The ongoing COVID-19 pandemic will only exacerbate these serious problems. As described in an April 9 Bloomberg article entitled "Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis," districts with high caseloads and a large number of judicial vacancies -- such as this District -- will be challenged to deal with the huge backlog of trials, hearings, sentencings, and other matters once normal operations resume. In an email to Bloomberg commenting on this article, the Chief Judge of this

7

        District agreed that the Central District of California will have a "significant backlog of trials" when normal operations resume.  She further expressed that the Judicial Council's recent declaration was "critical for us, given that all ten of our district judge vacancies have been declared judicial emergencies, and that we have an extremely heavy caseload."

(22) Given these facts, it is essential that Judges in this District resolve as many matters as possible via video teleconference and telephonic hearing while the COOP Plan remains in effect.  By holding these hearings now, this District will be in a much better position to work through the backlog of criminal and civil matters once in-person hearings resume.

(23) I therefore conclude that the guilty-plea hearing in this case cannot be further delayed without serious harm to the interests of justice.  If the Court were to delay this hearing until it can be held in-person, it would only add to the enormous backlog of criminal and civil matters facing this Court, and every Judge in this District, when normal operations resume.

(24) In addition, in this specific case, the guilty-plea hearing in this case cannot be further delayed without serious harm to the interests of justice because defendant is currently detained pending further proceedings.

(25) The defendant in this case consents to proceed with his guilty-plea hearing by video teleconference.

(26) Based on the findings above, and my authority under § 15002(b) of the CARES Act, the guilty-plea hearing in this case will be conducted by video teleconference as soon as possible.

IT IS SO ORDERED.

June 23, 2020
DATE

THE HONORABLE OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE